The next case called is number 124552, Rushton v. Wexner Health Services. Agenda number 14. You may proceed. My name is Andrew DeVoe, and I represent the attorney, intermediary, Wexner Health Sources. May it please the Court. Your Honor, the decision of the Fourth District Appellate Court should be reversed because the text of the FOIA statute, the legislative history of the FOIA statute, and the relevant cases discussing the FOIA statute all demonstrate that Wexner's settlement agreement with another private party is not subject to disclosure or pursuant to FOIA. This Court has been consistent and clear that in interpreting a statute, the Court is to look to discern and implement the legislative intent when drafting a statute. This Court has further said that, understandably, the most important source of that construction is the statute itself, and critically, that this Court is to look to all of the relevant provisions of the statute and look at the statute as a whole, not to look at a particular provision in a vacuum. In this case, as I will discuss, there are several important provisions from the FOIA statute. The first is Section 2.20. As I will discuss, Section 2.20, which reaches settlement agreements, whether they need to be by or on behalf of public bodies, demonstrates that Wexner's settlement agreement is not subject to disclosure or pursuant to FOIA. As I will also discuss, Section 7.2, if this Court determines Section 2.20 is not responsible for FOIA, which subjects documents of private party vendors like Wexner to disclosure only if they, quote, directly relate to the performance of a governmental function, further demonstrates that Wexner's settlement agreement is not subject to disclosure. Your Honors, among 16,000 words, 28 provisions, dozens of sub-provisions of the FOIA statute, there is one provision the legislature crafted, one that speaks to settlement agreements, and that is Section 2.20. And that section, among 16,000 words, in unambiguous and clear language, explains that it reaches settlement agreements entered into, quote, by or on behalf of public bodies. Section 2.20 does not reach the settlement agreement of private parties. There is no reported case, public access opinion, or any other decision, including every decision the plaintiffs have cited, every step of this litigation, that suggests 2.20 reaches private settlement agreements. Is it correct, Counsel, that both sides agree that this was a contract to provide or perform a governmental function? Absolutely, Your Honor. And, in fact, it's an excellent question because there's a lot, frankly, a lot in the response brief talking about scope of service. There is no question that Wexner performs a governmental service here. And that's why, if this Court were to find that Section 2.20 is not dispositive, it's Section 7.2, which governs, further governs, the documents of a private party vendor like Wexner, Your Honor, that performs a governmental function on behalf of the state. It is the one provision focused on, passed at the same time as I'll talk about in a minute, Section 2.20. With respect to Section 2.20, it's important to note, in fact, that prior to this case, no one has ever suggested or under tried to suggest the legislature intended FOIA to reach the private settlement agreements of private parties. And, importantly, this Court's guidance regarding, as talked about in the brief, this is actually... And, Counsel, there is nowhere that the legislature uses the phrase public bodies were those with whom the contract to perform government functions, right? Your Honor, it's absolutely, in the legislative history, it's very clear that 2.20 is focused on the government entities. But there is an interplay with 7.2, right? Because it doesn't appear that the legislature would need to use that language because of 7.2. We've specifically held that Section 7.2 ensures that public bodies cannot avoid disclosure responsibilities by contracting out government functions. Absolutely, Your Honor. In Better Government Association v. IHSA, this Court recognized the two different standards for public bodies and for private entities between Section 2C and 7.2. But, importantly, Your Honor... Let me just follow up with that then. So do you concede that if the settlement agreement was with DOC directly, it would be discoverable under Section 2.2?  2.20, rather? Yes, Your Honor. If this was a settlement agreement between IDOC and the private party, it would be covered by Section 2.20. Then why isn't it subject to disclosure under Section 7.2? Since we've specifically held that 7.2 ensures, as we already agreed upon, that governmental entities must not be permitted to avoid their disclosure obligations by contracting or delegating their responsibility to a private entity. Absolutely, Your Honor, because there is a clear difference when Your Honor looks at the language of 7.2 and what is required versus what is required of a public body, whether it be in Section 2.20 or Section 2C, which talks about the documents of public bodies needing to only have to pertain to the conduct of public business, whereas 7.2 specifically says that the documents of a private party vendor performing a governmental function must directly relate to the performance of that governmental function. And, Your Honor, respectfully, that is a point that the appellate court, the judge on the circuit court recognized, and the appellate court did not wrestle with, which is there is a clear difference in standards. And tellingly, Your Honor, Section 2C, that pertains to Section 7.2, that directly relates, were passed at the exact same time. The legislature had its pen in hand in drafting Section 2C to say that the public body's document need only pertain to the conduct of public business. But if you have a private party vendor who is performing a governmental function, that document must directly relate to the performance of the governmental function. So here we have the governmental function here as a provision of medical care to inmates? Yes, Your Honor. All right.  of a negligent provision of medical care to an inmate? Your Honor, it does memorialize a settlement of that lawsuit. Yes, Your Honor. So what definition of directly relates wouldn't include this document? Well, Your Honor, in this case, first of all, I think it's important to take us back. FOIA is a document-by-document basis of provision, Your Honor. For example, Section 11F specifically provides for a circuit court if there's a challenge to do an in-camera review of the documents. And in this case, Your Honor, and I would ask the court to look at the document yourselves, Judge Otwell clearly did, and said he did, an oral argument. There is nothing in that document that directly relates to the provision of health care. There's nothing about medical care provided, nothing about the medical condition of the inmate. As Judge Otwell said, it is a document memorializing the business decision. And it's important to recognize that that heightened standard here directly relates. There has to be some actual connection between that document and the performance of the governmental function. Otherwise, every document that Wexford has, and I think plaintiffs have suggested this, would be subject to disclosure. So a settlement document that Wexford negligently performed, that government function of providing care to inmates would not directly relate to that government function? Your Honor, it would not, because first of all, the document, and Your Honors have the documents obviously under seal, the document doesn't speak to, specifically disavows, affirmatively disavows the documents, any sort of acknowledgement, or that it speaks to the claim at all. The document itself, which is the focus of this particular case, and I think it's important, Your Honor, to take a step back. There are hundreds of documents, hundreds, maybe thousands of documents, that would obviously directly relate to the performance of the governmental function. Whether it's doctor's notes, a prescription list, if you were to go to Stateville and go to the records section, and it's all paper files, because IDOC doesn't have an electric monitoring of our records system, and you pull a patient's file, there could be any number of documents. But FOIA is clear that it's a document by document basis. In this instance, this particular document does not directly relate. And I think that it's important, Your Honor, this Court has told us, for example, So the document would have to specifically mention medical care? Your Honor, the document would have to specifically, it would have to directly relate to the provision of that care, yes, Your Honor. So whether it be a doctor's notes, or whether it be, it has something that actually speaks to the function. If you just have a document, and again, I think if Your Honor looks at the document, section 6.0 specifically disavows anything other than it memorializes a settlement. That's it. And I think that, you know, when we're talking about FOIA, again, a statute that is document by document basis. I mean, Your Honor, that is the, you know, I think looking at this actual one settlement agreement. Did it mention that it was settling the claim of negligent medical care? Your Honor, it does not say negligent medical care anywhere in the document. It says that it resolves. If it did, would it be discoverable? Your Honor, if it simply said that term, I don't believe so. I think that FOIA, and I think it's important to take a step back and to understand the thought process of these statutes. The distinction between what is required of a public body and what is required of a private vendor matters. The distinction matters, and it matters for a reason. If you look at the trade secret exemption, for example, Representative Curry in 1983 talked about the trade secret exemption needing to be broad so as not to chill the desire of private vendors wanting to do business with public bodies. And furthermore, this Court not only recognized the difference between the two standards in their government association, but in the second district, in the College of DuPage case, talked about how just because a private vendor agrees to perform a governmental function, it doesn't mean that every document that might be subject to a public body's disclosure is subject to disclosure, and that matters. But I think taking a step back, Your Honor, I don't think we've even reached 7-2. When you look at 2.20, it is, again, the only provision in this entire statute that speaks to this idea of sublimity. And this Court's canons of intercessory interpretation apply here, of course. The Exclusio Neo position, when you have one provision among 16,000 words, particularly a statute where what you're talking about are provisions that say what categories of documents are reached, that statutory interpretation is particularly applicable here because you have categories of documents that the legislature did not release. And to the extent to which, Your Honor, that there is an overlap between 2.20 and 7-2, I think as Judge Otwell rightly said on page 55 of his record in talking about the interplay between these statutes, that 2.20 limits the scope of 7-2. And that's consistent with this Court's discussion, for example, in the Burge case in 2014 about the interplay between the general and the specific. When you have a general provision, you have a specific provision, and you interplay between the two, to the extent to which there is that. You have a specific provision saying only public body settlement agreements are reached. I think it's also important, Your Honor, the legislative history couldn't be clearer. In 2009 and 2010, when these statutes are enacted all at the same time, that Burge case, there's back and forth between Your Honors in several opinions about some canons of statutory interpretation. And one of those that this Court discusses is if you have a provision that is passed and then a subsequent provision is passed. What is the interplay between those? And there could be some power to the idea that you have a subsequent provision. Well, nothing could be clearer from a legislature when the statutes and provisions are passed at the same time. They have a pen in hand. They know how to write a provision that applies to a public body. And they know how to write a provision that specifically applies to a private party. And that's exactly what they did here. I think furthermore, Your Honor, in terms of legislative history, it's critical not only in 2010, there's spirited back and forth between Speaker Madigan and Representative Black, as we cite in our brief. And then subsequently in 2016, when 2.20 is amended to add settlements agreements, Representative Ahman specifically asked Representative McMartin, the author of the bill, to sum up in a few sentences in layman's terms what it would mean. And Representative McMartin said, quote, people, taxpayers, would be entitled to look at the terms of a severance agreement that a public body subject to FOIA would enter into. All of these points with respect to 2.20 demonstrate that the legislature made this deliberate choice. But I would say that, Your Honor, if you were to get to 7.2, it is critically important to first compare that 2C, the pertains to provision in 7.2, passed at the same time, the same statute, the same subject matter, the disclosure obligations of a public body versus the disclosure obligations of a private party. And those two standards, as I said, are very different. There's just no question that in the legislature, this Court has told us repeatedly that if you have different language, and the U.S. Supreme Court has as well, you have different language in the statute, applying to two parties, and those standards are different on the same subject matter, that difference has to mean something. And here, understandably, it means a heightened standard for a private party vendor providing those services. And I just ask, Your Honor, to look at the specific document. We're not here suggesting all the expert documents don't directly relate. In fact, there are a number of them. Hundreds probably relate, but not this specific document. And I would argue, Your Honor, respectfully, the plaintiffs have the redacted version of this document. In a lot of FOIA cases, they just get the index, and it's almost like a prisoner's law. In this case, they have had that redacted document, and it is not Berger, it's not Prentiss-Berger, and I don't need to suggest any of the other ones. But there is not a single argument regarding the document itself. There is this general surface-level argument. Wexford provides health care. Wexford, there's a lawsuit evolving, they're sued for health care. The settlement agreement settles the claim. Therefore, this particular document rightly relates. And respectfully, I don't believe that that acknowledges the distinction the legislature made with the heightened standard between those two, and that it doesn't actually look at the document itself. And respectfully, in the FOIA context, the individual document matters. I would also just reference briefly the Pennsylvania case cited in the briefs. This Court told us this term, and has reminded us in the past, in January, it was the Federal Government Association versus the Office of Special Prosecutor involving the investigation. It's document number 122949. The case law from other states construed similar FOIA statutes to be pursued. And that's the only reason we mentioned the Pennsylvania right to no-law cases, because, to Your Honor's question, there are not a lot of questions, there are not a lot of cases in Illinois where parties are arguing over the directly-related component. There are cases arguing about governmental functions. There are cases arguing about some of the exemptions. And when Your Honors look at those Pennsylvania cases, Mid-Valley School District, which we cite, and Allegheny Department of Administration versus Parsons, the position is the same. In Section 506d.1, it tracks 7-2. And what's most important in this is, at first, it recognizes that the precise information, the actual document at issue, matters, and that it's a heightened standard. Because it applies to a private party. And specifically, the records reach, quote, are only those that relate to performance of that function. And plaintiffs understandably don't like these cases because it's one piece. And that isn't the quote from Parsons. That isn't what we have here. Again, we already talked about how the government function is a provision of medical care to inmates. And the document in question is the settlement of a claim that Wexford negligently performed that governmental function. How is that not what Parsons says? The quote from Parsons is, does not reach all records in possession of a private contractor that relate to the governmental function. Rather, the records reached are only those that relate to performance of that function. Because, Your Honor, the document doesn't speak in any way to the, it settles the lawsuit. It doesn't have a single sentence, Your Honor. Again, I would encourage the court to look at the specific document. It does not in any way. If we stay in a generalized discussion of the respect to the way that the appellate court does, then I understand Your Honor's point completely. But in this specific document, there is no analysis, nothing. If this document directly relates, then every document that Wexford has. Well, again, back to Parsons, must relate to the performance, to performance. Yes, Your Honor. So, medical care to inmates. I mean, can we take judicial notice that if there's a settlement, that the medical care was done in a negligent fashion? Absolutely not. I mean, that would completely undermine the whole purpose of settlement. It's the reason we have Illinois Rule of Evidence 408. In these courts, this court and others, the idea of settlement agreements in any way inferring that you would never have any settlement agreement. If this court were to base its ruling on that idea, that reading in a settlement agreement means negligent care provided, and therefore it means it directly relates. At least a claim of negligent care, right? I'm not saying, obviously, settlement agreements all the time say, you know, we're not giving any indication that we agree with the posture of the case, that we were negligent, but we settled for whatever reason. You know, and that reason could be a number of things, right? But the judicial notice part is that if there's a medical claim, at least the claim was negligent care, right? Well, Your Honor, I mean, that isn't a complaint, which of course is public. The complaint itself is public. And I think if the FOIA statute is to be made, the difference in standard between pertains to and directly relates is to mean anything at all. It affects the legislative intent. It means something here in the specific context of a settlement agreement. Again, it does not in any way, does not speak in any way to the care. And I think Your Honor raises a good point, that such a ruling really undermines the propriety and the desirability of settlement agreements, which Your Honor knows particularly in prisoner litigation, that in terms of the floodgates opening, it would be an absolute explosion. And that's a fact in terms of what we would end up. And I just, I want to make one point. I mean, I think that's critical, Your Honor. I understand your point completely, but in this context, this specific document, and we've been clear from the start that this doesn't, this case is about this document. That's it. This is not some sort of, you know, pass on any other type of document. We have cases about policies and procedure manuals right now. Well, of course those policies and procedure manuals directly relate. They are what, they're specific line by line of how the doctors are supposed to provide care. That is a different case and a different situation than the document that I would urge the court to look at and see that there's nothing in there that directly relates. If those words mean anything, which this court has told us it has to give effect to the legislator's intent, that's what those words mean. Your time has expired. Thank you, Your Honor. Good morning. May it please the court, counsel. My name is Don Craven. I appear on behalf of Bruce Rush of the Illinois Times. 220, 2.20, and 7.2 of FOIA should be read together. They were passed at the same time, and in passing those two sections, the General Assembly was solving two different sets of problems. 2.20 goes back to at least the early 90s in the city of Carbondale case, and from 92 forward there were a variety of situations that were presented in which public bodies, on behalf of themselves, employees, or officers, tried to escape application for the Freedom of Information Act with a variety of different arguments. We didn't pay for the settlement. The insurance company did. We don't have the document. The lawyer does. We don't have the document. The insurance company does. There were a variety of arguments that were presented. 2.20 was the opportunity for the General Assembly to address those issues for settlement agreements which relate to public bodies, employees, and officers. At the same time, in conjunction with 2.20, the General Assembly addressed the issue of privatization and the issue of access to records with private companies, in private companies, held by private companies, that directly relate to the provision or the failure to provide the governmental services pursuant to a contract with a public body. This case comes down to that. Are there records that Wexler has that would not be subject to 7.2, that similar records in the hands of a public body would be subject to disclosure? Sure. We get to know how much the General Assembly pays for its pencils because that's the expenditure of public funds and is subject to disclosure under the Act. Do we get to know how much Wexler pays for pencils? No. It's none of our business. That's their business, not directly related to the provision of governmental services. Do we get to know how much Wexler pays to settle cases of negligence against their doctors? Yes, because, A, that directly relates to the provision or the lack of or the failure to provide the governmental services pursuant to contract. So it's more than just the cost to the taxpayers that justifies the disclosure? I think there are two elements that justify the disclosure, as made clear in the Pennsylvania cases. Cost and quality or lack of quality of performance of services. Cost and quality are the two factors that I think are crucial. And in this case, did you get a redacted copy of the settlement agreement? Yes. And what, if any, additional information would warrant what's the justification for further disclosure? Cost. One of the redactions was the dollar amount. And I am sure there's nothing in that settlement agreement, as Your Honor noted. Settlement agreements are settlement agreements, and in every settlement agreement I've ever seen, the defendant denies any liability and denies any additional liability. But you go to the settlement agreement as done in the context of that underlying litigation, and there were clearly claims of negligent treatment of this decedent, alleging a failure to perform under the contract, under the statutes and under the constitutional provisions requiring medical care to inmates. Cost and quality were entitled to know that. In the Mid-Valley School District case from Pennsylvania, specifically the court says, citing the preceding Johnson case, the public has the right to know who is performing services for the government agency, the scope of the services, the disputes concerning the scope of services, the cost relating to those services, and the resolution of disputes concerning those services. In the Parsons case, it has to pertain to the type of quality of services performed, or failure to perform. Can you just follow through with that idea? Sure. The fact the case was settled with the denial of liability, no finding of negligence. What does that tell us about the quality of care? It tells us there was an allegation of a failure to perform. We know that already. It tells us that there was, we believe, a substantial amount of money paid to settle that claim, leading to the conclusion that the allegations to perform or the allegations of negligence, although denied, we're not disputing that they were denied, might be well taken. So is that what you're aiming toward, trying to find some way to use the settlement agreement to in some way be evidence that there was negligent performance of these duties? No. I represent a newspaper. They don't know negligence. Okay. Well, I guess my problem is you agree that this document is not going to tell us anything about the quality of care. It doesn't say whether it was good quality of care or negligent quality of care. This document won't tell us anything about that. But it will tell us the second element that's important on the disclosure side, which is cost. Cost of what? Cost of settling this case, which comes back directly to ultimately the tax credits. But the question is, what does that tell us about whether the conduct of the hospital directly related to health care? If the settlement's for a dollar, it may not tell us much. If the settlement is for a healthy six figures, somebody had some pretty good evidence of negligent health care. So you are agreeing that the amount of the money is evidence of negligent health care, and that's what you're looking for here, even though the document doesn't talk about that? It's an inference drawn from the amount of the settlement based on what we do. Neither Wexford nor DOC are going to pay six figures, a healthy six figures, we think, to settle a case that's worth no more than this is. So the inference is what directly relates to health care. And the cost. And the governmental function. The amount of the settlement and the inference that can be drawn directly relates to the performance of the governmental function. Yes. Can you address the question that, at the same time, the legislature specifically spoke on whether or not settlement agreements are open and discoverable under FOIA. At the same time, in very specific language, and limited that just to the public body. And then, at the same time, adopted a separate statute relating to private entities that do governmental function. And that second statute that was adopted at the same time doesn't refer to settlement agreements in any way. Isn't there an inference there that the legislature was separating the two ideas? So the legislature was solving two separate problems. They were solving, in 2.20, they were solving a rather longstanding problem of access to settlement agreements on behalf of public bodies' employees' offices. That's 2.20. In 7.2, they're addressing a relatively new problem of access to documents held by private entities who have contracts with public bodies. But obviously, settlement agreements and disclosure of settlement agreements was on their mind the same day. They didn't put that language into the new statute about private entities. Doesn't that not, the argument is that should be a suggestion that that was not the legislative intent. They were talking about disclosure of settlement agreements. They did not put that language into this other statute about private entities. They did not. What inference should we draw from that? I don't think any, because I think the new problem with government, with private bodies, privatization, access to those records was relatively new. And the General Assembly was making an effort to expand the reach of the definition of public records, if you will, to include those issues. Knowing full well that what records are going to be ultimately subject to that language in 7.2 is going to be a case-by-case, factual-based argument about the relationship of that document to public property. So that new legislation didn't, the legislature didn't anticipate, didn't include, wasn't legislating about settlement agreements by private parties. Is that what you're saying? They are in 7.2, not in 2.20. They don't use the language, of course. They don't use the language. But they use the language, all documents which directly relate to the governmental function. If the document relates, it's disposable. If it doesn't, the price of pencils that Wexford pays, it's not. But here, clearly, there are issues about performance and there are issues about cost. And that makes this document subject to 7.2. So when you say it's a case-by-case analysis, or document-by-document analysis, what you're really arguing is that any document that relates to the governmental function, which is providing health care, which is a governmental function here, would be subject to disclosure. Unless otherwise exempted. Personal medical records, those sorts of things. There are other exemptions in the statute. Why does the cost matter, counsel? Isn't the mere fact that there is a settlement agreement with or without disclosure accomplishing the same purpose? I mean, the dollar amount, I mean, that's something between the company and the individual, right? And change is based on circumstances. Go ahead. Except this settlement agreement and other settlement agreements that Wexford enters into are ultimately funded by taxpayers. And I don't know the answer to if there's an insurance company behind the Wexford settlement here or not. But all you have to do is watch an Allstate commercial and know that costs, be they insurance or Wexford, those costs to the taxpayers are going to be based on the claims experience that Wexford has in this contract as it rolls into the next contract or as it rolls into the next contract. So the government function here is a provision of medical care and ambulance, right? I think we're all clear on that. Yes. So are you extrapolating from that, then, that government function of medical care to inmates is influenced by the amount of cost? I mean, you add the settlement amount into that and indicate that the cost for that care is now enhanced by the fact that taxpayers are paying for the settlement? I'm just trying to see how the cost fits into the governmental function. The fact of the settlement and the cost of the settlement fits into the cost assessed for that governmental function to the taxpayers. Okay. So you're saying eventually the taxpayers are going to absorb the cost of the settlement, not the business? Yes. Doesn't Wexford have a contract now with the state which sets the reimbursement rate? Does it vary on amounts of settlements they might enter into or lawsuits they may not enter into where they don't agree but a verdict is entered against them? It's not a fixed dollar. There are set-offs. There are different provisions that may alter those monthly or annual payments to license them depending on their performance standards in the contract. Are there any other beneficial public policy interests at operation here at Council other than the cost to taxpayers? From this document itself, standing alone, probably not, given what I know of settlement agreements and having seen some of it, not all of it. So if we were relying on public policy grounds to support the decision in your favor, it would be strictly on cost to taxpayers? Yes. To use the extrapolation word, there's also a concern and there's language in the preamble to FOIA which the court has talked about time and time again. We're talking about lives of Illinois citizens here. We're talking about constitutionally mandated health care to inmates in Illinois prisons. And there are, I can grant you my assumption that there's no admission of liability and no admission of negligence in that settlement agreement. But it's all based on the complaint filed by the family in this case. And fundamentally we're dealing with the lives and the medical care that we have to provide and we should provide to inmates of Illinois prisons. The failure to provide adequate health care to Illinois inmates leads us to the, pardon me, to use a legal term, mess that Judge Mim has in the litigation that we attached in FIORA. We have allegations in that case and a demonstrated failure in that case of DOC to provide adequate mental health care. And that litigation is going to go on forever. And that litigation is going to cost the taxpayers of the state of Illinois a lot of money to rectify the inadequate standards that have been applied to mental health care in the past. So, yes, there are other public policy concerns at work. I see my time is about up in the absence of any other questions. Thank you very much. Thank you. Thank you. Reply. As respectfully as I possibly can, referring to an all-state commission, referring to counsel's understanding of the legislature's intent, this court need not look to the television or to, it can look to the legislative history itself that is in the very public access opinions that plaintiff cites. And, Your Honors, he did a couple of really important points in that context, which is that in 2009, when they were discussing the enactment of 4.20, there was a discussion of cost. Specifically, Representative Black raised in the spirit of discussion and this is cited in our brief, that asking this very concept of, quote, taxpayers and, quote, media gatekeepers, asking to learn the amount paid in connection with the settlement agreement and taxpayer money in the context of discussing the enactment of 2.20. So the policy argument that is being made without any citation whatsoever to any case, any legislative history, anything, a policy argument best made to the legislature now, was actually specifically considered the cost of the taxpayer, was considered and the result was Section 2.20 that did not include private tax. Judge Otwell, similarly, at the hearing, an oral argument, at Record 54, 55, specifically says, counsel, that's a good policy argument for the legislature, but when you look at 2.20 and at limiting 7.2, and you look at 7.2 and actually look at the document, which again, respectfully, counsel made a reference to his assumption that it disavows liability. The plaintiffs have the document. There is no document-specific argument in this case that satisfies the directly related standard that's going to mean anything. And respectfully, you know, this notion of, your honors really got to the nub of it, the idea that at the core is that the inference in a dollar amount is a reflection of the adequacy or lack of adequacy of the underlying governmental function. And respectfully, I think to your honors' line of question before, if that is the basis of this opinion, from this court, saying that this document is breached, that undermines the whole purposes of settlement agreements. Everyone in this courtroom who has practiced knows that there are cases that even if you think you have a strong case, maybe it's a case you can't wait on a motion to dismiss. And it's a case that's going to involve experts. And it's going to be an expensive case. Who knows? That's just one line. But to say that we can infer quality from the amount of the settlement agreement, therefore this document directly relates. Respectfully, that does not and cannot satisfy this. You know, the Pennsylvania cases, I would ask your honors to consider those. Because respectfully, they stand for the simple proposition about the relationship between the document and directly relates. And I think we've covered that. And I think that in terms of mentioning RASHA, with all respect, as this Court knows, that is a case involving IDOC, not relevant to this matter. And if anything, it proves the opposite. Which is there is incredible oversight of IDOC by the Federal District Court in that case. There's plenty of oversight to suggest that FOIA is the necessary element in terms of that component of health care. FOIA is important. And the preamble is important. But the preamble is 500 words of the 16,000. And I would ask your honors to consider that. That while the preamble does, of course, guide interpretations, it doesn't disperse orders. It doesn't supplant another 15,500 words and dozens of provisions and four dozen exemptions. And respectfully, for all those reasons, I would ask this Court to reverse the appellate rule and find that 2.20 demonstrates that this document is not a social disclosure. If not that route, then Section 17 is not appellate. Because this one particular route is not appellate. Thank you for your time. Thank you. Case number 1245 by 2, Rushton v. Wexford, will be taken under advisement as agenda number 14. Mr. Craven, Mr. DeVoe, we thank you for your arguments today. You are excused. Mr. Marshall.